**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 23, 2015
Decided October 26, 2015

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-1265

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 14-cr-30088-NJR-1 |
| TORK T. RODGERS, <br> *Defendant-Appellant*. | Nancy J. Rosenstengel, <br> *Judge*. |

**O R D E R**

Tork Rodgers pleaded guilty to possessing a firearm as a felon, 18 U.S.C.
§ 922(g)(1), and was sentenced to 15 months' imprisonment and 3 years' supervised
release. He filed a notice of appeal, but his appointed counsel asserts that the appeal is
frivolous and moves to withdraw. *See Anders v. California*, 386 U.S. 738 (1967). Rodgers
opposes the motion. *See* CIR. R. 51(b). Counsel has submitted a brief that explains the
nature of the case and addresses issues that an appeal of this kind might be expected to
involve. Because the analysis in the brief appears to be thorough, we limit our discussion
to the issues identified in that brief and in Rodgers' response. *See United States v. Bey*, 748
F.3d 774, 776 (7th Cir. 2014); *United States v. Wagner*, 103 F.3d 551, 553 (7th Cir. 1996).

Rodgers had driven from his home in Missouri to a motel in Illinois to meet a woman he connected with online. Things went well until his date joked about having a gun, which prompted Rodgers to show her a magazine of ammunition from one of his bags. Although he never displayed a gun or threatened her, the woman was alarmed and decided to alert the police. Telling Rodgers that she was leaving briefly to buy condoms, she instead called police to report that the man in Room 321 had a gun.

Rodgers went to the lobby looking for his date and was pointed out to waiting police officers by the desk clerk. Rodgers identified himself, and a computer search revealed an outstanding arrest warrant. After executing that warrant the police asked if Rodgers wanted his belongings from the room, and he blurted, "Man, I got a pistol up there." Police found a Hi-Point handgun and two magazines in his luggage.

Counsel tells us that Rodgers does not want his guilty plea set aside, and Rodgers does not contradict that assertion in his Rule 51(b) submission. Counsel thus properly omits any discussion about the adequacy of the plea colloquy or the voluntariness of the plea. *See United States v. Knox*, 287 F.3d 667, 671 (7th Cir. 2002); *United States v. Konczak*, 683 F.3d 348, 349 (7th Cir. 2012).

Counsel advises that he reviewed the district court's guidelines calculations but could not identify even a colorable claim of error. Rodgers disagrees, contending in his Rule 51(b) submission that a claim that the district court erred in assigning his base offense level under U.S.S.G. § 2K2.1(a)(6)(A) rather than § 2K2.1(a)(7) would not be frivolous. The district court concluded that the base offense level is 14 under § 2K2.1(a)(6)(A) because Rodgers is a "prohibited person" as described in 18 U.S.C. § 922(g). *See* U.S.S.G. § 2K2.1 cmt. n.3. Rodgers points to Application Note 4, which explains that the base offense level of 12 provided in § 2K2.1(a)(7) for situations not addressed in the other subsections often applies to persons who illegally transported guns across state lines. *See id.* cmt. n.4. This potential argument would be frivolous, however, as § 2K2.1(a)(6)(A) specifically applies to persons charged under 18 U.S.C. § 922(g), as Rodgers was; that he also took his gun across state lines is irrelevant.

Rodgers also points to Amendment 189 of the guidelines, effective November 1, 1989, which did provide a base level of 12 for prohibited persons under § 922(g). But § 2K2.1 has been amended several times since 1989, and courts use the version in effect at the time of sentencing (unless to do so would violate the Ex Post Facto Clause). *See* U.S.S.G. § 1B1.11(a), (b)(1); *United States v. Woodard*, 744 F.3d 488, 497 (7th Cir. 2014). The district court correctly used the version in effect at the time of sentencing, which had

not been amended in any material way since Rodgers committed the crime. *See* U.S.S.G. § 2K2.1 Historical Note.

Rodgers further contends that an appellate claim asserting that the district court should have subtracted 8 offense levels under U.S.S.G. § 2K2.1(b)(2) would not be frivolous. Under § 2K2.1(b)(2), the offense level would have been reduced to 6 if Rodgers possessed the handgun and ammunition "solely for lawful sporting purposes or collection" and "did not unlawfully discharge or otherwise unlawfully use" the weapon or ammunition. *See generally United States v. Gresso*, 24 F.3d 879–80 (7th Cir. 1994) (discussing application of § 2K2.1(b)(2)).

But to argue that the district court should have applied this provision to Rodgers would be frivolous. Rodgers had the burden to prove his eligibility for the reduction, *see Gresso,* 24 F.3d at 880, yet he did not introduce any evidence from which the district court could have found that he possessed the gun and ammunition solely for sporting purposes or collection. During allocution Rodgers asserted that he had possessed the gun for target practice and thus should receive the benefit of § 2K2.1(b)(2). Rodgers was not under oath, however, and neither did he offer any other evidence to back up his assertion. *See United States v. Sainz-Preciado*, 566 F.3d 708, 711–14 (7th Cir. 2009) (noting that defendant's unsworn version of events during allocution was not evidence that would meet his burden); *United States v. Anderson,* 632 F.3d 1264, 1270-71 (D.C. Cir. 2011) (noting that district court need not assign any weight to defendant's unsworn statements at sentencing). Whether § 2K2.1(b)(2) applies turns on the circumstances, including the type of gun, where and how it was possessed or used, and the defendant's criminal history. *See* U.S.S.G. § 2K2.1 cmt. n.6; *United States v. Lewitzke*, 176 F.3d 1022, 1028 (7th Cir. 1999). In similar circumstances—a hidden gun and readily accessible ammunition possessed by a defendant who said nothing about a sporting use when he was found with a gun at a location not suitable for sporting—reviewing courts have upheld a sentencing judge's finding that the defendant had not proved that he possessed a gun solely for sport or collection. *See id.* at 1028–29 (7th Cir. 1999) (noting that guns were found hidden behind towels and sheets in a bathroom closet and under mattress in bedroom); *United States v. Riley*, 376 F.3d 1160, 1171–72 (D.C. Cir. 2004) (noting that defendant was found with gun across state line from location of shooting range where he purportedly had used gun the previous evening); *United States v. Bayles*, 310 F.3d 1302, 1308–09 (10th Cir. 2002) (reasoning that defendant's possession of ammunition with handguns undercut assertion that guns were possessed *solely* for sport or collection). Rodgers, moreover, displayed his ammunition to his date in a manner that cannot be characterized as part of a "sporting" use, which renders frivolous his

suggestion that he should have benefitted from § 2K2.1(b)(2). *See Gresso*, 24 F.3d at 881 (stressing that use other than for sport eliminates availability of reduction even if gun or ammunition was acquired for sport); *United States v. Smeathers*, 884 F.2d 363, 364 (8th Cir. 1989) (upholding district court's finding that defendant who acquired and used gun for hunting but then fired it randomly throughout his house after quarreling with his wife was ineligible for reduction).

Rodgers, in his Rule 51(b) submission, also contends that a challenge to the 2 criminal-history points he received for a trespass conviction in Georgia in 2012 would not be frivolous. For that crime Rodgers was sentenced to 60 days' imprisonment, the threshold for assessing 2 criminal-history points instead of 1. *See* U.S.S.G. § 4A1.1(b). Rodgers was released from jail early, and in his view this conviction should have counted for only 1 point (which would have reduced his criminal-history score from 5 to 4 but not affected his criminal-history category). This potential argument is frivolous; the sentence pronounced, not the time served, determines criminal-history points. U.S.S.G. § 4A1.2 cmt. n.2; *United States v. DePriest*, 6 F.3d 1201, 1215 (7th Cir. 1993).

Counsel also considers but rejects as frivolous a possible claim that Rodger's prison sentence is unreasonably long. The district court discussed several factors from 18 U.S.C. § 3553(a), including the goals of deterring Rodgers and others from committing more crimes, avoiding an unwarranted disparity between his prison sentence and those imposed in other cases, and imposing punishment no greater than necessary. *See* 18 U.S.C. § 3553(a), (a)(2)(B), (a)(6). And although, as both counsel and Rodgers note, the judge did not address on the record all aspects of the defendant's arguments in mitigation, the judge was not required to. *See United States v. Johnson*, 643 F.3d 545, 549 (7th Cir. 2011) (explaining that sentencing court need not expressly respond to defendant's every argument, but only principal arguments sufficient to merit discussion).

Counsel's principal argument in mitigation was that Rodgers should receive a shorter sentence because, according to counsel, an outstanding warrant for his arrest in Virginia will make the defendant ineligible to serve the final months of his sentence in a halfway house. Yet the district judge did address this argument on the record by noting that the warrant already was seven years old and that whether Virginia would execute it was speculative. Rodgers personally proposed other grounds in mitigation during allocution, but he principally focused on his mental health, his military record, and his purported ignorance of the law prohibiting his possession of a gun. The judge addressed each of these on the record, and she was not required to recite—as Rodgers

assumes—specific Chapter 5 guidelines. *See* U.S.S.G. §§ 5H1.3 (mental and emotional conditions); 5H1.11 (military service). The district judge also noted on the record that Rodgers had denied knowing he could not possess a firearm. And though the judge did not explicitly address on the record Rodgers' contention about § 2K2.1(b)(2), that contention was too feeble to merit discussion. Ultimately the judge imposed the guidelines minimum, and a prison term within the properly calculated guidelines range is presumptively reasonable. *Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Smith,* 721 F.3d 904, 906 (7th Cir. 2013). Counsel and Rodgers have not identified a reason to disregard this presumption, and neither have we.

Rodgers' final contention in his Rule 51(b) submission is that a potential challenge to the conditions of his supervised release based on *United States v. Siegel*, 753 F.3d 705 (7th Cir. 2014), would not be frivolous. But, as required by *Siegel, see id.* at 707, the judge did explicitly justify on the record each condition of supervised release under the pertinent sentencing factors. *See* 18 U.S.C. §§ 3583(d); 3553(a). Further, none of the conditions of Rodgers' supervised release are like those we have found to be problematic. *See generally United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015); *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015); *Siegel,* 753 F.3d 705. Thus any challenge to the conditions of Rodgers' supervised release would be frivolous.

Counsel's motion to withdraw is GRANTED, and the appeal is DISMISSED.